UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MANUEL A. DURAND,** | Docket No.: 12-cv-7450-WJM-MF |
| Plaintiff, | |
| v. | OPINION |
| **FEDEX,** | |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

      This is an employment discrimination case which Plaintiff brings under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Defendant FedEx filed this motion for summary judgment. Plaintiff *pro se* Manuel A. Durand opposed and petitioned for the appointment of *pro bono* counsel. There was no oral argument. L.Civ.R. 78.1(b). For the reasons set forth below, Defendant's motion for summary judgment is **DENIED** with respect to the Title VII claim and **GRANTED** with respect to the Americans with Disabilities Act claim. Plaintiff's petition for *pro bono* counsel is **GRANTED**.

I.    FACTUAL BACKGROUND

    A.    **Facts Relevant to Title VII Claim**

      Plaintiff is a Peruvian-American who has been employed as a Freight Handler at FedEx's Newark Airport facilities since August 1991. (Defendant's Undisputed Statement of Facts ("Def's SOF") at ¶ ¶ 9-10, 16) Plaintiff complains of illegal discrimination, harassment, and retaliation at the hands of various supervisors between 2005 and 2011. The alleged violations of Title VII culminated in Plaintiff's being transferred to a different facility at Newark Airport in 2011.

The hostility began in 2005, when a FedEx superior told him he had to write a witness statement for an investigation of an internal complaint of discrimination that Durand's co-worker, Jose Castaneda, filed against two managers, Michael Fitzpatrick and Jim Fash. (Deposition of Manuel Durand ("Durand Deposition") at 48:12-49:24) Durand's participation in this investigation was supposed to have been confidential, but he believes it was not for two reasons. First, his manager at the time, Charlie Creekmur, told him senior management would retaliate against him for being involved in the investigation. (Durand Deposition at 49:1-6) Second, he noticed that after participating in this investigation, his managers began to scrutinize all his activities more intensely. (*See* Durand Deposition at 49:17-23) Moreover, FedEx's own letters about internal complaints note that while the internal investigations are kept as confidential as possible, complete confidentiality is not always possible. (*See*, *e.g.*, Durand Deposition, Exhibit 15)

From April 2006 until October 2007, Maria Toscano was Plaintiff's supervisor. (Def's SOF at ¶¶ 13-15) Toscano made racially hostile comments to Durand and other Peruvian co-workers. (Durand Deposition at 35:8-24) For example, she told him, "I hate Peruvians. All Peruvians." (Durand Deposition at 35:15-16) She said that Peruvians are *comemierda* ("eating shit"). (*Id.* at 35:17) When Durand told Toscano that he wanted to advance into an engineering position, she told him she would make sure he never advanced because he had been involved in internal complaints about discrimination. (*Id.* at 35:8-14) Toscano also issued a reprimand against Durand for insubordination. (Durand Deposition, Exhibit 2) The reprimand prevented him from applying for a new position for twelve months and placed his job in jeopardy. (*Id.*) Although FedEx investigated the reprimand for improprieties and found none, Durand claims he was not insubordinate.

At some point, Durand filed an internal complaint about Toscano, and FedEx transferred her in October 2007. (*Id.* at 43:2-4, 94:12-17)

Before FedEx transferred Toscano, she hired a new Team Leader, Douglas Swiney. (Durand Deposition at 94:12-17) Plaintiff claims that he continued to suffer from a hostile environment under Swiney's leadership from 2007 until 2011. Plaintiff testified that his complaints against Toscano inspired Swiney's hostility against him due to the loyalty between Toscano and Swiney. (*See* Durand Deposition at 94:12-17, 104:22-23) Durand submitted several individual statements from coworkers stating that Swiney maintained a racially hostile work environment by assigning Hispanics less favorable tasks, calling them "you people," and through his attitude and body language. (*See* Durand Deposition at 98:20-100:20; Statement

2

of Cesar Beltran)  Plaintiff testified that Swiney once said, "I will not going to apologize to Spanish people, nor I shake hands with them.  I'd rather to be fired." [*sic*] (Durand Deposition at 106:20-22)  Durand submitted a statement signed by ten co-workers complaining that Swiney was responsible for "discrimination, retaliation, harassment, favoritism, and hostile environment" at the FedEx EWRRT Warehouse.

In 2008, Durand began obtaining mental health treatment for a condition caused by the hostility in his working environment. (Durand Deposition at 156:12-15)

In 2010, Durand filed an internal complaint against Doug Swiney's discriminatory treatment of the Hispanic workers. (Durand Deposition at 101:1-102:4)  A meeting was held where Swiney threatened to get his son to "do something" to the person who filed the complaint if the investigation resulted in Swiney's being terminated. (Durand Deposition at 98:9)

In July 2011, Durand's Senior Manager, Salvatore Sacca transferred Durand to a new building at Newark Airport. (Durand Deposition, Exhibit 17)  The transfer was the resolution management reached following the investigation of an internal complaint about racism that Swiney filed against Durand.[1]  (Durand Deposition at 112:8-12)  In his new position, Durand is paid the same, however, he has not been able to work overtime and has suffered some cutback in the number of hours he can work.

**B. Facts Relevant to the Americans with Disabilities Act Claim**

Plaintiff alleges that FedEx unreasonably failed to accommodate a disability in violation of the Americans with Disabilities Act.  Plaintiff was diagnosed with an "adjustment disorder" in November 2008. (Def's SOF at ¶ 34)  Plaintiff's condition was aggravated by certain co-workers on his PM shift, so he applied for a lateral move to an AM shift. (*Id.*)  There were no open full-time positions on the AM shift at the time. (Def's SOF at ¶ 35)  FedEx offered him two part-time positions on the AM shift in February 2009, but Plaintiff declined. (Def's SOF at ¶ 35)

Plaintiff made a request for a similar accommodation in September 2011, two months after his transfer to another Newark Airport facility. (Def's SOF at ¶ 36)  He alleged that he was suffering from depression as a result of Senior Manager Salvatore

---

[1] Swiney is African-American.  (Durand Deposition at 99:9-12)

Sacca and the transfer. (Def's SOF at ¶ 26) Plaintiff applied for the same position as a Freight Handler on the AM shift. FedEx did not grant the request because someone with more seniority applied for the same position. (Declaration of Vonda Bennett) FedEx attempted to accommodate Durand by offering him two part-time positions.

## II.  PROCEDURAL BACKGROUND

Durand filed an EEOC Charge on October 13, 2011. (Def's SOF at ¶ 43) The EEOC issued a right to sue letter on October 24, 2012, and Plaintiff filed this lawsuit within 90 days of the letter.

## III.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

"A court should not hold a *pro se* complaint reviewed under a summary judgment motion to the same standard as one drafted by legal counsel. However, although *pro se* complaints are entitled to liberal construction, the plaintiff must still set forth facts sufficient to survive summary judgment." *Ebron v. Oxley*, CIV. 06-01938FLW, 2007 WL 2140056, at *2 (D.N.J. July 24, 2007) (*citing Wilson v. Maben*, 676 F. Supp. 581, 583 (M.D. Pa. 1987); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992); *Shabazz v. Odum*, 591 F. Supp. 1513, 1516 (M.D. Pa. 1984); *Kaiser v. Bailey*, No. 01-6151, 2003 WL 21500339, at *3 (D.N.J. July 1, 2003)).

## IV. TITLE VII

In *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286 (3d Cir. 2007), the court explained the standard for proving a retaliation claim under Title VII:

> Under the *McDonnell Douglas* paradigm, the employee bears the initial burden of establishing a *prima facie* case of retaliation. He must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. If the employee establishes a *prima facie* case of retaliation, the burden of production shifts to the employer to articulate some legitimate, non-retaliatory reason for the adverse employment action. If the employer meets its burden, the burden of production returns to the employee, who must now show, by a preponderance of the evidence, that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.

*Id.* at 301.

### A. Prima Facie Case

In a claim of retaliation, the standard required to show an "adverse employment action" differs from the standard used for claims of discrimination. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). Here, an "adverse action" is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). The Court of Appeals for the Third Circuit has recognized a showing of a hostile work environment can satisfy the adverse employment action prong of a retaliation claim. *Jensen v. Potter,* 435 F.3d 444, 449 (3d Cir. 2006).

A "broad array of evidence" can be used to demonstrate a causal link between a protected activity and an adverse employment action. *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007). This can include the temporal proximity between the protected activity and the adverse action as well as a "pattern of antagonism" during the intervening period between the protected activity and the adverse action. *Ibid.*

Plaintiff has brought forth a *prima facie* case for retaliation. He engaged in the protected activity of complaining about racially discriminatory behavior several times, notably in 2005 and 2010. He began to experience hostility after the initial investigation and was plainly told that the hostility was the result of his participation in an investigation of discrimination. Swiney made a generic threat to harm the person who filed the 2010 complaint if Swiney lost his job due to it. Seven months after FedEx concluded its investigation of Durand's 2010 complaint against Swiney, FedEx transferred Durand as the result of Swiney's allegedly retaliatory complaint about racism against Durand. The transfer resulted in some lost earnings and opportunities for overtime. Moreover, Plaintiff has brought forth evidence that he suffered years of hostility from Toscano and Swiney after he served as Jorge Castaneda's witness. The transfer, in addition to the hostility and Swiney's threat, would be enough to deter a reasonable employee from making a complaint, and thus Plaintiff has established an adverse employment action.

There is also sufficient evidence of causation. The transfer occurred after years of racially-charged antagonism between Swiney and Durand that involved three complaints against Swiney and Swiney's compatriot, Toscano. Swiney's threat to the Hispanic workers was made during the pendency of Durand's 2010 complaint against him. Also, Swiney's allegedly retaliatory complaint against Durand could not have been filed very long after the disposition of Durand's 2010 complaint against Swiney.

FedEx argues that Durand admitted he had no evidence that Swiney ever knew about Durand's 2010 complaint. (Durand Deposition at Def's SOF at ¶ 30) Nevertheless, there is evidence on the record from which a jury could reasonably conclude that Swiney did know, or at least believed that Durand filed the complaint. First, the fact that Swiney threatened workers, including Durand, for the filing of the 2010 complaint demonstrates that he knew Durand was one of the people who might have filed it. Second, Durand had been warned in 2005 that internal complaints were not really confidential. Third, the letters Durand received about his investigations noted that the investigations were not strictly confidential. Moreover, there had been a history of racially-charged antagonism between Swiney and Durand. Finally, FedEx did not submit any affidavit from Swiney denying his knowledge or belief that Durand filed the 2010 complaint. Construing the ambiguity of Swiney's knowledge about the complaint in Durand's favor, the Plaintiff has demonstrated that Swiney was aware, or at least believed, that Durand filed the internal complaint against him.

### B. Pretext

FedEx claims it had a legitimate non-retaliatory reason for transferring Durand, namely, the complaint of racism that Swiney filed against Durand. Plaintiff testified that Swiney's internal complaint was a substantively baseless, retaliatory scheme to harm Durand. Construing all ambiguities in Durand's favor, a jury could find Durand's accusation to be true.

There is ample evidence that Swiney demonstrated vocal hatred of Hispanic workers and threatened or antagonized those who complained about his behavior. Durand testified to Swiney's discriminatory and retaliatory conduct, and co-workers provided corroborative statements, some of which were made directly to FedEx during the course of the investigation of Swiney's complaint against Durand. Moreover, FedEx has not provided any evidence justifying its decision to transfer Durand. The legitimacy of Swiney's complaint and the basis for transferring Durand are material facts in dispute.

FedEx also notes that all of Durand's internal complaints were investigated and that it discovered no violations. However, FedEx has produced none of the internal documents substantiating its own findings. On the contrary, the documents that Durand has submitted, some of which were from internal investigations, indicate the existence of racial animus and retaliation.

Plaintiff has brought forth evidence of a prima facie case of retaliation in violation of Title VII. FedEx cannot offer a legitimate reason for the hostile environment or Swiney's threat. It can only justify Durand's transfer. However, Durand has produced evidence that FedEx's proffered non-retaliatory reason for the transfer was pretextual. For these reasons FedEx's motion for summary judgment will be denied with respect to the Title VII claim.

### IV.   AMERICANS WITH DISABILITIES ACT

Title I of the Americans with Disabilities Act prohibits covered employers from discriminating against qualified individuals with disabilities because of their disabilities, a prohibition that includes failing to reasonably accommodate such individuals. *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 191 (3d Cir. 2009). The ADA does not require an employer to create a new position to accommodate an employee with a disability. *Buskirk v. Apollo Metals*, 307 F.3d 160, 169 (3d Cir. 2002). If accommodating a disability would involve ignoring rules that all others

must obey, such as rules of seniority, then the accommodation is not reasonable. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 398 (2002).

FedEx did not violate the ADA when it offered Plaintiff two part-time positions in place of the AM shift he desired. FedEx does not need to create a special full-time position on the AM shift to accommodate Durand, nor does it have to ignore its internal rules of seniority in order to accommodate his disability. Accordingly, Defendant's motion for summary judgment is granted on the ADA claim.

## V. PRO BONO COUNSEL

28 U.S.C. § 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to afford counsel." District courts have "broad discretion" to decide whether requesting counsel is appropriate, may request counsel at any point in the litigation, and may do so *sua sponte*. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (*citing Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)). As an initial matter, the Court must first determine if the party seeking counsel has an underlying case with arguable merit in fact and law. *Id*. at 498-99. Once the claim has passed that threshold, the Court then considers the following list of criteria to assess whether requesting counsel would be appropriate: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations, and (6) whether the case will require testimony from expert witnesses. *Id*. at 499. The list is non-exhaustive, and the Court may consider other facts or factors it determines are important or helpful. *Id*.

The Plaintiff has demonstrated he has a meritorious claim. A Title VII claim is a complicated legal issue, and this case is likely to turn on credibility issues. Additionally, an out-of-court resolution will be more likely if Plaintiff is on equal footing with Defendant.

## VI. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is **DENIED** with respect to the Title VII claim and **GRANTED** with respect to the ADA claim. Plaintiff's petition for *pro bono* counsel is **GRANTED**. An appropriate order follows.

/s/ William J. Martini

_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 22, 2014**