UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MANUEL A. DURAND,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FEDEX,<br><br>　　　　Defendant. | Docket No.: 12-cv-7450-WJM-MF<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

　　Defendant FedEx brings this Motion for Reconsideration of an Opinion and Order denying in part Defendant's Motion for Summary Judgment. Plaintiff *pro se* Manuel A. Durand opposed. There was no oral argument. L.Civ.R. 78.1(b). For the reasons set forth below, Defendant's Motion for Reconsideration is **DENIED**.

**I.　　PROCEDURAL BACKGROUND**

　　In brief, this is an employment discrimination case. After working more than a decade as a freight handler for FedEx, Durand began to experience hostility and retaliation at the hands of his former Team Leader, Maria Toscano. Toscano blatantly let Durand know that the retaliation and hostility was the direct result of his Peruvian ethnicity and his participation as a witness in an investigation of workplace discrimination. Even after Toscano left her position as Durand's superior, Toscano's replacement, Doug Swiney continued to harass, humiliate, and threaten Durand. As Durand continued to complain, Durand and his co-workers observed continued retaliation in the form of unfavorable job assignments and humiliating treatment. Finally, Swiney and two other superiors filed an internal complaint accusing Durand of discrimination. Due to this complaint, FedEx transferred Durand.

On October 15, 2013, FedEx filed a Motion for Summary Judgment. Plaintiff *pro se* filed his own Opposition, supported by substantial documentation, to support his claims of workplace discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. FedEx filed no reply.

On May 22, 2014, this Court entered an Opinion and Order denying summary judgment with respect to Plaintiff's Title VII claim. Also, on May 22, 2014, the Court granted Plaintiff's application for the appointment of *pro bono* counsel. After the denial of summary judgment, but before the entry of *pro bono* counsel's appearance, Defendant filed this Motion for Reconsideration.

## II. LEGAL STANDARD

Motions for reconsideration filed in the District of New Jersey are governed by Local Rule 7.1(i) of the Local U.S. District Court Rules, rather than the Federal Rules of Civil Procedure. *Dunn v. Reed Grp., Inc.*, No. CIV.08-1632 (FLW), 2010 WL 174861, at *1 (D.N.J. Jan. 13, 2010) (*citing* Lite, *N.J. Federal Practice Rules*, Comment 6 to L.Civ.R. 7.1 (Gann 2008)). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Under Local Rule 7.1(i), a motion for reconsideration may be granted if: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. *Champion Labs., Inc. v. Metex Corp.*, 677 F. Supp. 2d 748, 750 (D.N.J. 2010) (*citing Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Local Rule 7.1(i) does not permit a court to rethink its previous decision; instead, the rule permits a reconsideration only when "dispositive factual matters or controlling decisions of law were presented to the court but were overlooked." *Prophete v. Univ. of New England*, 2006 WL 1074664, at *1 (D.N.J. Apr. 21, 2006) (*citing Resorts Int'l v. Greate Bay Hotel and Casino*, 830 F. Supp. 826, 831 (D.N.J. 1992)).

## III. DISCUSSION

Defendant only seeks reconsideration under the third prong of Local Rule 7.1. We will review some factual and legal issues for additional analysis of the Plaintiff's Title VII claim. These include the Court's consideration of out-of-court statements made by Durand's co-workers, a factual error regarding the date when Doug Swiney made a particular threat, the Court's consideration of Durand's transfer as a discrete

act of retaliation or discrimination in violation of Title VII, and the existence of Title VII liability on a hostile work environment theory. Ultimately there was no clear error in denying summary judgment.

### A. Out of Court Statements by Durand's Co-Workers

In the Motion for Reconsideration, FedEx argues that the Court erred in considering the statements that Durand's co-workers made about the existence of discrimination, retaliation, and harassment at the FedEx facility where they worked. FedEx failed to raise this issue in the reply brief it never filed. Nevertheless, we address the issue here briefly.

FedEx makes this argument, relying entirely on *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009), which stated, "Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." FedEx takes this statement out of context and fails to persuade that consideration of the co-workers' statements was a clear error of law.

In *Smith v. Allentown*, the statements excluded from consideration at summary judgment were statements that were not capable of admission at trial; the statements were double hearsay, and the witness who was to be called to testify about those statements was not the original declarant. 589 F.3d at 693-94. In this case, by contrast, Durand's co-workers' statements could be admissible at trial if Durand calls the co-workers to testify about their own statements. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (stating that a nonmoving party need not depose his own witnesses or "produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

### B. Factual Error Regarding Date of Swiney's Threat to Hispanic Employees

The Opinion contained a factual error involving the date that Durand's Team Leader, Doug Swiney, threatened possible violence against Hispanic employees. The import of this factual error is that Swiney's threat, standing alone, cannot constitute a violation of Title VII; such a stand-alone claim would be time-barred. Even taking into account this factual error, however, there was still no clear error in denying summary judgment.

Under Title VII's terms, an individual challenging an unlawful employment practice must file a formal charge with the EEOC prior to commencing suit in court

3

to challenge the practice. *See* 42 U.S.C. § 2000e-5(e)(1); § 2000e-5(f)(1). In New Jersey, a plaintiff must submit his EEOC charge within 300 days of the challenged employment action. *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000).

The Court misconstrued paragraph 30 of FedEx's statement of fact (ECF No. 14-1 at 7) and Durand's deposition transcript at 102:19-103:11 (ECF No. 14-6 at 3-4) as indicating that Swiney's threat occurred following Durand's first official internal complaint against Swiney. This would have placed the threat sometime after August 2010. In fact, other portions of Durand's deposition transcript make it clear that the threat occurred in 2008. (ECF No. 14-5 at 44).

In this case, Durand submitted an EEOC Intake Questionnaire on August 19, 2011 alleging race and national origin claims, as well as a retaliation claim. Based on the filing dates of his Intake Questionnaire and his EEOC charge, the statute of limitations for his Title VII claims is October 23, 2010. This means that any discrete act of discrimination must have occurred on or after October 23, 2010. Thus Swiney's threat of violence, which occurred well before October 23, 2010, standing alone, would be time-barred.

Even taking into account this factual error, however, there is still no clear error in denying summary judgment. Title VII liability could still exist on the basis of the transfer as a discrete act and on a hostile work environment theory.

### C. Transfer as Discrete Act of Retaliation

FedEx argues that the Court should have rejected the transfer as a discrete act of retaliation in violation of Title VII for two reasons. First, FedEx argues that Plaintiff failed to satisfy the but-for causation requirement for a discrete act of retaliation. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (U.S. 2013). Second, FedEx argues that Durand did not produce sufficient evidence that the alleged reason for transfer, a complaint of discrimination that Durand's superiors filed against him, was pretextual.

The analysis begins with the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To demonstrate a defendant-employer's liability for Title VII retaliation, a plaintiff-employee must first bring forth enough evidence to establish a prima facie case of illegal retaliation. In order to meet this burden, the plaintiff must have evidence that he (1) engaged in Title VII-protected activity; (2) the defendant-employer took adverse employment action against the plaintiff; and (3) there was a causal nexus

4

between the plaintiff's participation in the protected activity and the defendant's adverse action. *Hussein v. UPMC Mercy Hosp.*, 466 F. App'x 108, 112 (3d Cir. 2012) (*citing Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006)). The Supreme Court recently clarified that the "causal nexus" in a retaliation case must be "but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (U.S. 2013).

If the plaintiff proves a *prima facie* retaliation claim, the burden of production shifts to the defendant, who is obligated to advance evidence of a legitimate, non-retaliatory purpose for its adverse employment action. *See Delli Santi v. CNA Ins. Companies*, 88 F.3d 192, 199 (3d Cir. 1996)). If the employer successfully brings forth evidence of a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the plaintiff to prove the defendant's adverse action was pretext for retaliation. *Hussein v. UPMC Mercy Hosp.*, 466 F. App'x 108, 112 (3d Cir. 2012). Where the plaintiff fails to raise a genuine issue of material fact for each element of its retaliation claim, summary judgment should be granted for the defendant. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997).

### *1.) But-for Causation*

Citing only non-binding case law, FedEx argues that Plaintiff could not prove but-for causation because Durand's 2011 transfer is too remote in time from his 2010 internal complaint against Swiney. *Dooley v. Roche Labs., Inc.*, No. CIV. 04-2276 (GEB), 2007 WL 556885, at *10 (D.N.J. Feb. 15, 2007). But here, Durand provides evidence that the cause of the transfer was not merely the 2010 complaint, but an ongoing pattern of complaints and retaliation that lead right up to the date of his transfer.

Durand and his co-workers stated that Durand would often complain about the team leaders' mistreatment of Hispanic workers, that FedEx's management would do little or nothing to correct the problem, and that the team leaders would assign Durand undesirable jobs as retaliation for bringing the issues to management's attention. (*See* ECF No. 15 at 10, 11, 35, 36; ECF No. 19-1 at 7). The tension involving Durand's pattern of complaining continued until three of his superiors counter-filed a complaint of discrimination against him.

Most critically, Durand brought forth evidence that the superiors' counter-complaint was designed to get Durand transferred so as to avoid confronting the problems that Durand continued to bring to the management's attention. (*See* ECF No. 15 at 21, 28, 30, 32; ECF No. 19-1 at 2, 4, 5). This evidence came in the form

of multiple statements from other employees who observed that Durand was a model employee whom his Team Leaders disliked because of his complaints about harassment, discrimination, and retaliation. (*See* ECF No. 15 at 32, ECF No. 19-1 at 2, 5). For these reasons, there is no clear error in a finding of but-for discrimination.

### *2.) Pretext*

FedEx's argument that the underlying Opinion failed to properly analyze the existence of a pretextual reason for the transfer is also not convincing. To demonstrate that a defendant-employer's proffered legitimate reason for transferring a plaintiff was pretextual, the plaintiff generally must submit evidence which (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that retaliation was more likely than not the determinative cause of the adverse employment action. *See Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994). Absent direct evidence of retaliation for opposing or reporting discrimination, a plaintiff may prove retaliatory animus indirectly with "(1) evidence of an intervening pattern of antagonism by the defendant, or (2) evidence of the defendant's inconsistent explanation of its actions, i.e., that its explanation is pretextual." *Burton v. MBNA Am. Bank, N.A.*, No. C.A.03-915 GMS, 2005 WL 1463533, at *5 (D. Del. June 22, 2005) (*citing Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000)).

In this case, the overall evidence casts substantial doubt on the legitimacy of the reason for the transfer. The statements of Durand and his co-workers, along with the surrounding circumstances, sufficiently demonstrate that the purpose of the transfer was more likely than not to stop Durand from complaining so that FedEx could continue ignoring problems with racial harassment and hostility in the EWRRT Station.

The transfer occurred at the end of five years of recorded racial and retaliatory antagonism between Durand and his team leaders and supervisors. This period of hostility and retaliation only emerged for Durand after ten years of employment with FedEx. Suddenly, after Durand served as a witness in an investigation, his working atmosphere became hostile.

Moreover, the notion of a complaint about discrimination that superiors file against a subordinate who had frequently complained that his supervisors were guilty of discrimination sounds on its face like a form of retaliation. This is all the

more true where, as here, the record indicates that FedEx found no underlying evidence that Durand was discriminating against anyone. On the contrary, the papers from the investigation indicate that no third party witnesses observed Durand discriminating against, harassing, or intimidating anyone. Some of the interviewees affirmatively stated that they never saw Durand exhibit racism, intimidation, or even insubordination. (*See*, *e.g.*, ECF No. 15 at 11, 14, 23). Durand's co-workers observed, seemingly unanimously, that Durand was a diligent and scrupulous employee who fell victim to the retaliation of his team leaders. (*See, e.g.*, ECF No. 15 at 9-36). For these reasons, there was no clear error of law in finding that Durand had produced sufficient evidence of pretext.

### D.  Transfer as Discrete Act of Discrimination

FedEx argues that the transfer should have been disregarded as a discrete act of discrimination because the transfer was not an adverse employment action. The argument is not persuasive.

In the discrimination context, an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152-53 (3d Cir. 1999). In the Opinion, the Court noted that Plaintiff lost the opportunity to work overtime at his new location. A transfer involving lost opportunity for overtime can be an adverse employment action. *Williams v. City of Harrisburg*, No. CIV.A. 1:CV-03-2339, 2005 WL 2335131, at *5 (M.D. Pa. Sept. 23, 2005).

### E.  Hostile Work Environment

In the Motion for Reconsideration, FedEx offers no new arguments about the hostile work environment theory of Title VII liability. Rather, FedEx asks for review of the arguments in its Motion for Summary Judgment. We review those here in more depth.

FedEx's argument for the dismissal of the hostile work environment claim was twofold, involving a timeliness aspect and a sufficiency aspect. First, FedEx argued that all hostile work environment claims against Toscano were untimely. It then argued that Plaintiff failed to satisfy the "severe and pervasive" prong of the

test for hostile work environment. We address each of these arguments in turn.

### *1.) Timeliness of Hostile Work Environment Claim Against Toscano*

"Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). A hostile work environment claim is timely if any act constituting part of the hostile work environment occurred within the filing period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). "As a threshold matter, the District Court must reexamine the scope of the incidents that are part of the continuing violation before the hostile work environment claim may be evaluated." *Mandel v. M & Q Packaging Corp.*, 706 F.3d at 167.

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 117 (*quoting* 42 U.S.C. § 2000e–5(e)(1)). Separate acts that can be aggregated into a hostile work environment are those that are "linked in a pattern of actions which continues into the applicable limitations period." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). The events constituting the hostile work environment should not be "parsed out . . . and viewed separately," but should be considered as a whole. *Mandel v. M & Q Packaging Corp.*, 706 F.3d at 168.

"A hostile work environment is like a disease. It can have many symptoms, some of which change over time, but all of which stem from the same root." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 756 (3d Cir. 1995). "[T]he focus is the work atmosphere as a whole." *Id.* "It does not matter that the form of harassment changed over time, nor does it matter that the identity of those responsible changed over time." *Id.* at 757.

FedEx provided no authority to support its position that the hostility of Durand's employment environment under Toscano should be treated separately (and therefore as untimely) from the hostility in his environment under Swiney. According to Durand's uncontradicted testimony, Toscano inspired Swiney's hostility against Durand via the loyalty between Toscano and Swiney. (*See* ECF No. 14-5 at 40; ECF No. 14-6 at 5). The hostility that Durand suffered under both Toscano and Swiney were related to his denouncement of racial hostility in the workplace. For these reasons, there was no clear error in considering the atmosphere under both team leaders as a single unlawful employment practice and applying the continuing violation doctrine.

### *2.) "Severe and Pervasive"*

In order to establish a prima facie case for a racially hostile work environment or a retaliatory hostile work environment under Title VII, the Plaintiff must show (1) he suffered intentional discrimination because of his race or his protected complaints; (2) the discrimination was severe and pervasive, (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) a basis for employer liability exists. *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006). FedEx argued that the Plaintiff failed to bring forth sufficient evidence of "severe and pervasive" discrimination.

The court considers the totality of the circumstances when determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir. 1990). Factors we must look at include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). We recognize that Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Nor does Title VII protect "offhand comments and isolated incidents." *Carver v. City of Trenton*, 420 F.3d 262-63 (3d Cir. 2005). "[T]he conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* at 262.

In this case, the Court made no plain error in denying the Motion for Summary Judgment on the hostile work environment claim. In its Motion for Summary Judgment, FedEx offered the following analysis:

> In this case, Durand alleges that Toscano humiliated him by instructing him in front of others to perform certain tasks; telling him that she has the "last word;" spoke to him in an unprofessional manner; and stated to him that she did not like Peruvians and that they were "comemierda." (Ex. C: Durand Dep. pp. 35, 43-44). . . .
>
> [T]hese allegations . . . do not establish a hostile work environment as a matter of law. To begin with, Title VII is not a "general civility code" and ordinary tribulations of the workplace do not support a hostile work environment claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Furthermore, the allegation that Toscano did not like Peruvians and thought they were commemierda does not establish his

9

> harassment claim. Offhanded comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim. *Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005). Rather, the conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* at 262; *see also Perry v. Harvey*, 332 Fed. Appx. 728, 731 (3d Cir. 2009) (summary judgment affirmed where plaintiff presented testimony of a racial epithet but found that it did not rise above an offhanded comment). Since Toscano's alleged harassment was not severe or pervasive to alter the conditions of Durand's employment, his harassment claim against Toscano must be dismissed.
>
> Similarly, Durand's allegations against Swiney must be dismissed. Durand vaguely alleges that Swiney harassed him, but only offers minimal factual support for his allegations. Specifically, he alleges that he treated African-Americans more favorably with respect to job assignments; that he was always "on his back;" that he would not shake hands with a Hispanic coworker; and that he generally was known as a racist. (Ex. C: Durand Dep. pp. 97-98, 106). Like his allegations against Toscano, Durand's allegations against Swiney are not severe or pervasive. They amount to nothing more than complaints of ordinary tribulations of the workplace or otherwise vague, unsubstantiated and conclusory allegations of Swiney being a racist. As a result, these allegations will not support a harassment claim as a matter of law.

(ECF No. 14-2 at 20-21).

FedEx selectively chooses from the incidents in the record and portrays those it does select in the best possible light for itself. The Court will here take a more thorough look at the evidence on the record and construe it in the best light for Plaintiff, as the summary judgment standard requires. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 601 (1986).

Between 2006 and 2007, Tosacno told Durand, "I hate Peruvians, all Peruvians" and told him that Peruvians are *comemierda*, meaning "eating shit" or "shitheads." (ECF No. 14 at 35; ECF No. 15 at 41). The effect of these comments was so severe that one of Durand's Peruvian co-workers, Linda Anton, stated that she transferred rather than be subjected to Toscano's harassment. (ECF No. 19-1 at 3). Where a supervisor makes it abundantly clear that she has disgust for an employee based on a protected status, even in just a couple instances, it could fairly be said that the conduct is "sufficiently severe or pervasive to alter the conditions of

10

the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). *Compare with Taylor v. Metzger*, 152 N.J. 490 (1998) (finding an issue of material fact under the New Jersey Law Against Discrimination as to the existence of hostile work environment based on the single incident of a supervisor calling a subordinate a "jungle bunny").

Although Toscano left in 2007, the hurtful comments and humiliating working environment continued through 2011 under Doug Swiney's leadership. Swiney made the working environment hostile by calling Hispanic workers "you people" instead of using names (ECF No. 15 at 35-36 ), and making the very pointed and hurtful comment that he would rather be fired than shake hands with or apologize to a Hispanic person, (ECF No. 14-6 at 7). Swiney and his co-Team Leader Hassan Fullwood would also treat the Hispanic workers poorly by yelling at them and allowing American workers to chat and shirk responsibilities while breaking up Hispanics engaged in conversation and making the Hispanics do all the work. (ECF No. 15 at 16, 31, 33, 36, 57). Durand's co-workers all agreed that they endured discriminatory treatment and hostility in the workplace, and some felt that only Durand was speaking up about it. (ECF No.15 at 17, 19). It even appears from the papers submitted that FedEx had identified Durand as a "leader" of the Hispanic workers. (ECF No. 15 at 11, 14).

The hostile environment that lasted from 2006 through 2011 also involved alleged interference with Durand's job advancement. For example, Durand alleges that Toscano told him she would make sure he never got a promotion because he had complained about discrimination. (ECF No. 14-5 at 15). Durand testified that Toscano falsely reprimanded Durand for insubordination, which prevented Durand from applying for a promotion and placed his job in jeopardy. (ECF No. 14-7 at 3). Swiney filed an allegedly false complaint of discrimination against Durand, which resulted in Durand's transfer.

FedEx also failed to note that the hostility involved a threat of violence directly related to a protected activity. Swiney told Hispanic subordinates that he would get his son to "do something" to the person who had complained about discrimination against Swiney. (ECF No. 14-5 at 44).

Finally, Durand and his co-workers complained that Swiney would assign the Hispanic workers unfavorable tasks, notably the "tie-down," which he did not make the American workers do. (ECF No. 15 at 16, 29, 32, 33, 36, 57). Other workers noticed that Swiney would specifically assign Durand unfavorable tasks every time Durand complained about discrimination. (ECF No. 15 at 32).

While none of these acts individually would create an inference of severe and pervasive discrimination, in sum total they do. There is evidence that the Team Leaders used words that were very clearly, pointedly, and intentionally made to humiliate Durand and his Hispanic co-workers on the basis of ethnicity. The supervisors made Durand the target of multiple, baseless complaints which a rational jury could conclude were only filed to retaliate against him for complaining about discrimination. Durand was also subjected to a threat of violence. Finally, Durand was unfairly assigned unfavorable job duties and prevented from seeking promotions as methods of humiliating him and retaliating against him. Many of Durand's Hispanic co-workers have echoed complaints of retaliatory job assignments and abusive language. In sum, there was no clear error in finding that this cluster of evidence amounted to "severe and pervasive" hostility.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Reconsideration is hereby denied.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 12, 2015**